UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

STANTON M. HALES,

        Defendant.
_____/

Case No: 23-cr-20645
F. Kay Behm
U.S. District Judge

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO DISMISS INDICTMENT (ECF No. 19)**

**I.     PROCEDURAL HISTORY**

This matter is before the court on Defendant Stanton M. Hales' Motion to Dismiss Indictment.  (ECF No. 40).  On November 15, 2023, Hales was indicted on three charges:  (1) felon in possession of a firearm under 18 U.S.C. § 922(g)(1) and § 924(e); (2) two counts of possession of ammunition by a felon under § 922(g)(1) and 18 U.S.C. § 924(e), commonly referred to as a "felon in possession" law.  Hales filed his motion to dismiss the indictment on April 19, 2024.  (ECF No. 19).  Central to Hales' motion is whether § 922(g)(1) is constitutional under the U.S. Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v.*

1

*Bruen*, 597 U.S. 1 (2022).[1] While this motion was pending, the Sixth Circuit considered that question and determined that § 922(g)(1) "is constitutional on its face and as applied to dangerous people." *United States v. Williams*, 113 F.4th 637, 662 (6th Cir. 2024). In light of the Sixth Circuit's holding in *Williams*, the parties submitted supplemental briefing on Hales' motion. (ECF Nos. 31, 33). The court held a hearing on the motion on October 28, 2024. After the hearing, the parties provided further supplements to the record. (ECF Nos. 34, 36, 37). This opinion follows.

For the reasons described below, the court finds that Hales may lawfully be prohibited from possessing firearms and **DENIES** Defendant's Motion to Dismiss.

## II. FACTUAL BACKGROUND

Hales is before the court on a charge of felon in possession and challenges the constitutionality of those charges as applied to him. Due to his prior felony convictions, Hales' alleged possession of a handgun violates 18 U.S.C. § 922(g)(1).

---

[1] Hales' initial motion also challenged whether his prior Michigan drug trafficking convictions qualify as "serious drug offenses" under the Armed Career Criminal Act (ACCA), arguing that because after Hales was convicted, the federal government removed a cocaine derivative called [123 I] ioflupane from Schedule II of the controlled substance schedules, and thus the Michigan offenses did not "match" the federal definition as required under the ACCA. The Supreme Court recently rejected Hales' argument in *Brown v. United States*, 602 U.S. 101, 123 (2024), where it held that "a state drug conviction counts as an ACCA predicate if it involved a drug on the federal schedules at the time of that offense."

Under the Sixth Circuit's decision in *Williams,* Hales' prior convictions are relevant to his as-applied challenge to § 922(g)(1).  Hales' records reflect the following relevant convictions, as described by the Government from the PSR in *United States v. Stanton Hales*, Case No. 12-cr-20801, and other documents filed in that case:

- Possession with intent to deliver less than 50 grams of cocaine, committed on May 9, 1995. Police in Flint saw a suspected drug deal and approached Hales (who they recognized from prior arrests). Hales threw a baggie containing 23 crack rocks to the ground.  An officer looked at the baggie, so Hales picked it up and ran from police.  Police caught him and Hales tried to eat the baggie.  Hales pleaded no-contest to possession with intent to deliver cocaine.  In 1997 Hales was initially sentenced to probation, which he violated three times.  After the third violation in 1998, he was sentenced to 36-120 months.  He was released on parole in 2001, but absconded and returned to custody as a parole violator.  In 2003 he was released on parole again.  He again absconded.  He returned to custody again until he was re-paroled in 2004.  He violated parole a third time by committing a new offense.  In 2005 he returned to custody.  He was ultimately released in 2008. (PSR ¶ 27, Case No. 12-cr-20801).

(ECF No. 33, PageID.90).

- Possession with intent to deliver cocaine less than 50 grams, committed April 20, 2005.  Police approached Hales who was drinking in public.  As they approached Hales ran and threw a baggie with 19 grams of crack from his pocket.  Officers arrested Hales, who had an outstanding probation violation warrant.  Hales pleaded guilty to possession with intent to deliver cocaine and the court sentenced him to 36 months of probation.  He violated probation in 2007, and the court sentenced him to 12 to 240 months in prison.  He paroled in 2008 but absconded. He was arrested and he received drug

> treatment and home detention for his parole violation. He violated his home detention and was arrested on new charges. Despite this, his parole was reinstated and he ultimately discharged from parole in 2011. (PSR ¶ 32).

(ECF No. 33, PageID.90).

- Possession with intent to distribute cocaine, committed on August 9, 2012. Hales met an informant in Flint to sell cocaine during a controlled buy-bust. During the controlled buy-bust, police approached to arrest Hales, who ran and thew one baggie of cocaine and tried to eat another baggie. The baggie ripped and Hales had cocaine all over his clothes. Hales was charged in federal court and pleaded guilty to possession with intent to distribute cocaine. (PSR ¶¶ 8-11). Hales was sentenced to 108 months in custody and six years of supervised release. (Case No. 12-cr-20801, ECF No. 77: Judgment, PageID.347). In 2021, he violated supervised release by using drugs and absconding from a half-way house. (Case No. 12-cr-20801, ECF No. 90: Supervise Release Violation Petition, PageID.373-75). He was arrested and gave police a false name. He was sentenced to 14 months custody for the supervised release violation. (Case No. 12-cr-20801, ECF No. 104: Supervise Release Violation Petition, PageID.421).

(ECF No. 33, PageID.90-91).

The Government also points out that Hales has various other misdemeanor convictions, including drunk driving (2010)—he was driving 93 mph in a 70 mph zone (PSR ¶ 34), solicitation of a prostitute (1998) (PSR ¶ 30), possession of marijuana (1998, 2001) (PSR ¶¶ 29, 31), providing false information to police (he gave officers a fake name in 2001) (PSR ¶ 31), and frequenting a drug house (1996) (PSR ¶ 28). Further, in 2009, he was convicted of felony fleeing and eluding third degree, obstructing an officer, and possession of marijuana. (PSR

4

¶ 33). In that case, Hales led police on a vehicle-chase in which he drove a truck 45 mph on a 25-mph residential street while fleeing police. Though Hales had a passenger in his truck and was near houses, Hales drove his truck onto the front lawn of a home and then jumped out and ran between some houses, while the truck with the passenger continued to roll. *Id*. When police finally stopped him, he gave them a false name. *Id*. *See* ECF No. 33, PageID.91.

### III.  STANDARD OF REVIEW

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment codified a pre-existing "individual right." 554 U.S. 570, 579-81, 592 (2008). This right protects the ability to keep, for "lawful purposes," the kinds of weapons in common usage, like those used for self-defense. *Id.* at 625, 627 (quotation omitted). *Heller* cautioned that nothing in its opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," like § 922(g)(1). *Id.* at 626. Thus even after *Heller*, many courts of appeals, including the Sixth Circuit, refused to hear as-applied challenges to § 922(g)(1). *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010). The U.S. Supreme Court upended that tradition in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). *Bruen* required the government to show that a regulation's infringement on a particular citizen's Second Amendment right was "consistent with this Nation's historical tradition of firearm

5

regulation." *Id.* at 17. The scope of that inquiry remained unclear. *See United States v. Rahimi*, 144 S. Ct. 1889, 1927 n.1 (2024) (Jackson, J., concurring) (collecting cases). The Supreme Court then attempted to clarify *Bruen*'s holding in *United States v. Rahimi*, 144 S. Ct. 1889 (2024). *Rahimi* emphasized that firearm regulations need not have a historical "twin" to be valid. *Id.* at 1898 (quoting *Bruen*, 597 U.S. at 30). Instead, the relevant inquiry is whether the challenged regulation is consistent with the "principles that underpin our regulatory tradition." *Id.*[2] In light of *Bruen* and *Rahimi*, the Sixth Circuit considered whether § 922(g)(1), a federal "felon in possession" law, remained a constitutional mechanism for disarming people in *United States v. Williams*. *See* 113 F.4th 637 (6th Cir. 2024). *Williams* is a published decision in which the court concluded that 18 U.S.C. § 922(g)(1) is constitutional on its face and as applied to "dangerous" people. *Id.* at 663.[3] It also set forth the standard for determining whether a person convicted of a felony is "dangerous" and can be disarmed.

---

[2] Still, the exact method of that approach remains unsettled. *Compare Rahimi*, 144 S. Ct. at 1908 (Gorsuch, J., concurring) ("[W]e have expressly rejected arguments that courts should . . . glean from historic exceptions overarching 'policies,' 'purposes,' or 'values' to guide them in future cases"); *with id.* at 1925 (Barrett, J., concurring) (noting that "historical regulations reveal a principle, not a mold"); *and id.* at 1932 (Thomas, J., dissenting) (arguing that a founding-era law "must be 'well-established and representative' to serve as a historical analogue" to a modern regulation).

[3] Accordingly, to the extent that Hales continues to assert any facial challenge, the court rejects any such challenge posed by Hales in his initial motion to dismiss.

"When evaluating a defendant's dangerousness, a court may consider a defendant's entire criminal record," "as well as other judicially noticeable information." *Id.* at 660.

Under the *Williams* framework, criminal convictions can broadly be separated into three categories. The first category encompasses crimes against a person such as murder, rape, assault, and robbery, which speak "directly to whether an individual is dangerous." *Id.* at 658. In this category, the burden of proof to show non-dangerousness is "extremely heavy." *Id.* ("[V]iolent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question."). The second category encompasses crimes like drug trafficking or burglary. "[T]hese crimes put someone's safety at risk, and thus, justify a finding of danger." *Id.* at 659. The Sixth Circuit's analysis of drug trafficking's dangerousness is noted as follows:

> "[D]rug trafficking is a serious offense that, in itself, poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010). In addition, it often leads to violence. *See, e.g.*, *Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (Kennedy, J., concurring in part and concurring in the judgment).

*Id.*

The final category includes crimes like mail fraud or making false statements. Often, such crimes cause no physical harm to another person or the

7

community, and the *Williams* panel indicated that a defendant's burden is low because district courts should generally find that these crimes "don't make a person dangerous." *Id.*[4] Notably, prior convictions can be accepted "without an evidentiary hearing or jury fact finding" and that a presentence report whose contents have not been objected to can also be so considered. *Id*. at 662 (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 228–39 (1998)).

## IV.   ANALYSIS

Hales primarily has three drug-trafficking convictions that are relevant to the instant motion. In 1995, Hales was convicted of possession with intent to deliver less than 50 grams of cocaine. In 2005, Hales was convicted of possession with intent to deliver less than 50 grams of cocaine. In 2012, Hales was again convicted of possession with intent to distribute cocaine. The Government argues that, under *Williams*, Hales' drug trafficking convictions are more than sufficient to justify of finding that Hales is a dangerous convicted felon. The Government also points to his conviction for felony fleeing and eluding, which put

---

[4] A note on phrasing: this court attempts to use, where possible, language that centers the dangerousness of the crime and acts at issue. Convictions based on crimes which put another person's safety at risk are valid bases for disarming someone under § 922(g)(1). *Williams*, at *40-41. As the Supreme Court put it: "Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *United States v. Rahimi*, 144 S. Ct. 1889, 1902 (2024); *see also United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) (holding that the offense of drug trafficking itself poses a danger to the community).

others at risk.  In contrast, Hales argues that he has never been convicted of a violent crime.  He also urges the court to reject the Government's argument that his drug-trafficking offenses are inherently dangerous and they do not rise to the level of dangerousness found in *Williams*.[5]

Under the *Williams* framework, a court should ask: has the defendant been convicted of any felonies for dangerous conduct?  If so, Congress could constitutionally disarm them.  Although the *Williams* court at times put the analysis in terms of "dangerous persons" and whether a person "is dangerous," the analytical framework only asks about the dangerousness of their conduct which resulted in a felony conviction.  See *Williams*, 113 F.4th at 662; *id.* at 660 (phrasing the inquiry as "whether a defendant's past convictions are dangerous"). While *Williams* noted "that courts may wish to consider information beyond criminal convictions when assessing a defendant's dangerousness," 113 F.4th at 658 n.12, the Sixth Circuit has declined to consider evidence that the present charge would lend to a showing of his dangerousness.  See *United States v. Vaughn*, 2024 WL 4615853, at *2, n.2 (6th Cir. Oct. 30, 2024).  Similar to *Williams*, in *Vaughn*, the defendant's prior "criminal convictions [were] sufficient to resolve

---

[5] Hales also relies on the Ninth Circuit decision in *United States v. Duarte*, 101 F.4th 657, 680 (9th Cir.), reh'g en banc granted, opinion vacated, 108 F.4th 786 (9th Cir. 2024).  However, that decision has been vacated.

this case." *Id*. The court again reached the same conclusion in *United States v. Morton*, No. 24-5022, --- F.4th ----; 2024 WL 5114316 (6th Cir. Dec. 16, 2024), where, in assessing dangerousness, the court considered only the defendant's criminal convictions, not the conduct underlying the present indictment. Here, the court concludes that it need not consider the circumstances that bring Hales to federal court on the present charges and relies on his prior convictions to evaluate dangerousness. The court can, however, consider the underlying facts of each conviction as set forth in the unobjected-to PSR from *United States v. Hales*, Case No. 12-cr-20801. *See United States v. Jennings*, 2024 WL 4560602 at *5 (considering information about the behavior underlying the defendant's convictions because it appeared in the "unobjected-to PSR" prepared prior to sentencing).

With that in mind, two considerations justify denying Hales' motion. First, Hales has multiple felony convictions, which, while not dispositive, weigh against a finding that Congress may not constitutionally disarm him. Second, Hales has three drug trafficking felony convictions from 1995 to 2012, all of which fall under *Williams*' second category of presumptively dangerous crimes. Drug-trafficking convictions are specifically identified by the Sixth Circuit as those "that inherently pose[] a significant threat of danger[.]" *Williams*, 113 F.4th at 663. Hales' argument suggests that his particular drug-trafficking offenses do not rise to the

10

level of dangerousness in *Williams*; however, it is difficult to discern what exactly might be a non-dangerous drug-trafficking conviction if drug trafficking is inherently a dangerous crime, as held by the Sixth Circuit. *See id.* at 659 ("[C]rimes [that] put someone's safety at risk . . . justify a finding of danger."). But the circumstances of Hales' multiple drug trafficking convictions for cocaine are not like those identified by the Sixth Circuit as non-dangerous, such as mail fraud or making false statements.

For example, in the 1995 conviction, Hales threw a baggie of 23 rocks of cocaine to the ground and ran from the police. While he was initially sentenced to probation, he violated his probation three times and was ultimately sentenced to 36-120 months in 1998. After his release in 2001 on parole, he absconded; he was release on parole in 2003 and absconded again. He was returned to custody after violating his parole a third time. He was then released in 2008. In the 2005 trafficking conviction, Hales was approached by police while drinking in public and threw a baggie of 19 grams of crack from his pocket. He was sentenced to 36 months' probation. After violating his probation in 2007, he was sentenced to 12-240 months in prison. He was paroled in 2008, but absconded. Despite violating his home detention, he was discharged from parole in 2011. In the third conviction, Hales met an informant in Flint to sell cocaine during a controlled buy-bust. When police approached, he threw one baggie of cocaine and tried to eat

11

the other. He was sentenced to 108 months in custody and six years of supervised release. In 2021, he violated supervised release by using drugs and absconding. He was sentenced to 14 months for the supervised release violation.

Hales' role was not peripheral to the drug trafficking operation; however small it may or may not have been, he was central to the sales. Drug trafficking is a presumptively dangerous felony; it is the defendant's burden to overcome that presumption. *Williams* provides a defendant with "an opportunity to make an individualized showing that he himself is not actually dangerous." 113 F.4th at 663. By filing this motion to dismiss, Hales has invoked this "opportunity," but because he essentially offers no evidence or argument with respect to his specific underlying convictions, he has not shown that "he himself is not actually dangerous." *See United States v. Barber*, 2024 WL 4443763, at *2 (N.D. Ohio Oct. 8, 2024). Instead, his argument is that his drug trafficking charges did not involve any violence committed by him and thus, his felony convictions do not establish his dangerousness. By this argument, he suggests that to establish dangerousness, a drug trafficking conviction must also fall in to the first category of dangerous felonies identified in *Williams* - that the conviction was a violent crime "against a person" like murder, rape, and robbery. However, the Sixth Circuit made it clear that drug trafficking generally poses a significant "danger to the community" and "often leads to violence." 113 F.4th at 659; *see also United*

12

*States v. Jennings*, 2024 WL 4560602, at *5 (E.D. Mich. Oct. 24, 2024) (The court found that the defendant's prior illegal gun possession charges (and possibly the body armor charge) fall into the second category of offenses identified by the *Williams* court, those that are not violent crimes against a person but "may nonetheless pose a significant threat of danger.") (quoting *Williams*, 113 F.4th at 659). Whatever scenario might qualify as a non-dangerous drug trafficking charge, the court does not find it here. Additionally, one of Hales' convictions – felony fleeing and eluding in the third degree – is a crime in Williams' first category which were directly dangerous to others. *See United States v. Green*, 2024 WL 4469090, at *3 (E.D. Mich. Oct. 10, 2024) (conviction for fleeing and eluding involved danger to others.); *United States v. Smith*, 2024 WL 4242484, at *4 (E.D. Ky. Sept. 19, 2024) (past conduct, including involvement in a shooting death, fleeing from police, and drug trafficking left no question of dangerousness.). Accordingly, this conviction properly serves to further demonstrate Hales' dangerousness. Under the totality of the facts, Congress can lawfully disarm Hales.

## V.     CONCLUSION

The court finds that Hales has not rebutted the heavy presumption that his record includes convictions for crimes which posed a danger to others and the community and that § 922(g)(1) may constitutionally be applied to him.

Therefore, the court **DENIES** Defendant's Motion to Dismiss the indictment under § 922(g)(1).

Additionally, pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A) court finds that the time from entry of this order to the currently scheduled trial date of March 25, 2025 are excludable delay, because the ends of justice are served by excluding the time and because serving those ends outweighs the interest of the public and the defendant in a speedy trial. Pursuant to 18 U.S.C. § 3161(h)(7)(B), the court also finds that the failure to grant an extension of time would very likely deny counsel for the defendant and the attorney for the Government the reasonable time necessary for effective preparation before the scheduled trial date.

**SO ORDERED**.

Date: December 19, 2024         s/F. Kay Behm
                                F. Kay Behm
                                United States District Judge